SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
SAMANTHA C. GRANT, Cal. Bar No. 198130
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:   310.228.3700
Facsimile:    310.228.3701
E mail:   sgrant@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
WHITNEY NONNETTE PERRY, Cal.
Bar No. 295222
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:   213.620.1780
Facsimile:    213.620.1398
Email:
WNonnettePerry@sheppardmullin.com

Attorneys for Defendant
TARGET CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| IAN LENAHAN, an individual,<br><br>            Plaintiff,<br><br>      v.<br><br>TARGET CORPORATION, a California corporation; and DOES 1 through 25, inclusive,<br><br>            Defendants. | Case No. 2:21-cv-02710-FLA-RAO<br><br>**JOINT STATUS REPORT RE DISCOVERY MEET AND CONFER ON MARCH 11, 2022 PURSUANT TO COURT'S MARCH 11, 2022 ORDER**<br><br>DISCOVERY MATTER<br><br>[Complaint Filed: February 26, 2021] |

-1-

Plaintiff Ian Lenahan ("Plaintiff") and Defendant Target Corporation ("Target") hereby submit this joint status report, pursuant to the Court's March 11, 2022 order.

On March 11, 2022, following the scheduled 1:00 pm deposition of Frederick Lopez, Plaintiff's counsel (Young Ryu, Henna Choi and Sarah Cohen) and Target's counsel (Samantha Grant) met and conferred for approximately one hour and 15 minutes by Zoom.  Karen Waters, Court Reporter, transcribed the meeting.  At the meeting, the parties failed to reach any agreement.  Attached hereto as Exhibit A is a true and correct copy of the transcript of the meet and confer.

On March 12, 2022, Plaintiff's counsel informed Target's counsel that it would agree to Target's March 10, 2022 offer for Plaintiff to appear on March 15, 2022 at the court reporter's office for his deposition with all counsel and the court reporter appearing remotely and the videographer appearing in person.  On March 13, 2022, Plaintiff imposed additional conditions on his appearance at the court reporter office, which are not within Target's control regarding the videographer's wearing a mask and an HEPA air filter being in the room.  Target agreed to ask the court reporter's office to about these new conditions.  In any event, on March 14, 2022, Target filed a notice of withdrawal of its *ex parte* application to set the location of Plaintiff's deposition in order to avoid further burden to the court.  [Dkt. 38].

Also, on March 14, 2022, Target filed an opposition to Plaintiff's motion for a protective order, which Target was unable to timely file due to the ECF outage on the due date [Dkt. 39].  Target's position is that Plaintiff's *ex parte* application is not well founded.

1  Dated:  March 14, 2022

2

3                                    By  _____
                                              */s/* Sarah H. Cohen
4                                              YOUNG RYU
                                               HENNA CHOI
5                                              SARAH COHEN
                                            Attorneys for Plaintiff
6                                              IAN LENAHAN

7

8
   Dated:  March 14, 2022
9

10

11                                   By  _____
                                              /s/ Samantha C. Grant
12                                          SAMANTHA C. GRANT
                                         WHITNEY NONNETTE PERRY
                                          Attorneys for Defendant
13                                         TARGET CORPORATION

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 5 of 69   Page ID #:1161

MEET AND CONFER,  on 03/11/2022                                         Page 1
IAN LENAHAN vs TARGET CORPORATION, et al.

1               IN THE UNITED STATES DISTRICT COURT

2                 CENTRAL DISTRICT OF CALIFORNIA

3    IAN LENAHAN, an                )
     individual,                    )
4                                   )
              Plaintiff,            )
5                                   )
       -vs-                         ) No. 2:21-cv-02710-
6                                   ) FLA-RAO
     TARGET CORPORATION, a          )
7    California corporation;        )  **Certified Transcript**
     and DOES 1-25, inclusive,      )
8                                   )
              Defendants.           )
9

10

11

12           REPORT OF MEET AND CONFER PROCEEDING

13                FRIDAY, MARCH 11, 2022

14                     7:13 P.M.

15

16

17

18

19

20

21

22

23

24   REPORTED BY: Karen Waters
     Registered Professional Reporter

25

```
 1          IN THE UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA

 3   IAN LENAHAN, an            )
     individual,                )
 4                              )
             Plaintiff,         )
 5                              )
      -vs-                      ) No. 2:21-cv-02710-
 6                              ) FLA-RAO
     TARGET CORPORATION, a      )
 7   California corporation;    )
     and DOES 1-25, inclusive,  )
 8                              )
             Defendants.        )
 9

10

11

12

13

14

15

16

17

18

19

20

21

22              The meet and confer, taken

23   before KAREN WATERS, Registered Professional

24   Reporter, via Zoom videoconference on

25   March 11, 2022, commencing at 7:13 p.m.
```

```
 1    PRESENT:

 2     LOYR, APC
       Mr. Young W. Ryu
 3     Ms. Henna H. Choi
       Ms. Sarah H. Cohen
 4     3130 Wilshire Boulevard
       Suite 209
 5     Los Angeles, California 90010
       213-318-5323
 6     young.ryu@loywr.com
       henna.choi@loywr.com
 7     sarah.cohen@loywr.com

 8          Appeared on behalf of the Plaintiff;

 9     SHEPPARD MULLIN
       Ms. Samantha C. Grant
10     1901 Avenue of the Stars
       Suite 1600
11     Los Angeles, CA 90067
       310-228-3739
12     sgrant@sheppardmullin.com

13          Appeared on behalf of the Defendants.

14
       ALSO PRESENT:  Syed Hassan (deposition moderator)
15

16

17

18

19

20

21

22

23

24

25
```

Case 2:21-cv-02710-FLA-RAO  Document 42  Filed 03/14/22  Page 8 of 69  Page ID #:1164

MEET AND CONFER, on 03/11/2022                                        Page 4
IAN LENAHAN vs TARGET CORPORATION, et al.

 1                    FRIDAY, MARCH 11, 2022

 2                         7:13 P.M.

 3                          -o0o-

 4          WHEREUPON, the following proceedings

 5    were taken pursuant to the Federal Rules of

 6    Civil Procedure.

 7              *        *        *        *        *

 8          MR. RYU:  Counsel, Ms. Grant, would you

 9    like to state your position regarding the

10    March 15th depo first?

11          MS. GRANT:  Sure.  As reflected in my

12    e-mail messages yesterday, we would like --

13    well, we would have liked the deposition to be

14    on March 14th.  Do you-all have even March 14th

15    available?

16          MR. RYU:  It was already communicated to

17    you, March 14th, I have, and Sarah has a

18    full-day mediation.  So we will not be

19    available.

20          MS. CHOI:  I have a deposition.

21          MR. RYU:  And, as I already told you, we

22    will try to bring back March 15th, which you

23    rejected earlier because of some schedule you

24    have with a flight, which I believe was

25    canceled, and then they put it back and then

Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 9 of 69   Page ID #:1165

MEET AND CONFER,  on 03/11/2022                                                  Page 5
IAN LENAHAN vs TARGET CORPORATION, et al.

1   canceled again.

2              But for the March 15th depo,

3   Ms. Grant, if you want to take the depo of

4   Plaintiff, we will work with you, produce

5   Plaintiff on March 15th.

6          MS. GRANT:  Well, I did want to try to

7   make my obligation that I agreed to several

8   months ago; but if you-all are telling me that

9   it's not going to happen for March 14th, that's

10   just how it has to be.

11              I noticed the deposition for

12   March 15th in person days ago while your motion

13   for the Court to -- for protective order, and

14   one of the dates you provided to the Court for

15   your preferred date was March 15th, which is why

16   I picked March 15th.

17              So I am unclear why, if you-all

18   have a pending motion asking the Court for

19   March 15th and I served the deposition for

20   March 15th, why you are saying that you are not

21   sure whether March 15th is available.

22          MR. RYU:  You, again, misunderstood or

23   are misrepresenting what I just told you.

24   Please pay attention to what I'm saying,

25   Ms. Grant.

1              I just said we will work with you

2     to have March 15th deposition of Mr. Lenahan

3     happen.  So we will do the deposition of Ian

4     Lenahan on March 15th.

5              MS. GRANT:  Okay.  Because earlier you

6     said you will see if you can bring that date

7     back.  So that's why I thought you were saying

8     that it wasn't a guarantee that March 15th was

9     going to be the day.

10              So are you saying, then, that, yes,

11     you will produce your client for deposition on

12     March 15th?

13              MR. RYU:  Yes.  But the form of the

14     remote deposition should be discussed.

15              MS. GRANT:  Agreed.

16              So I noticed the deposition to be

17     in person.  And as you all know, before the

18     Court's order striking your motion for

19     protective order and denying your

20     ex parte application, I had already, as a

21     compromise, changed the date of the deposition

22     from one of my preferred dates, i.e. before I

23     went on my scheduled business trip, to your

24     preferred date as a compromise.  And my thought

25     was that I am compromising with the date, but we

```
 1   wanted the deposition to be in person.
 2              I read the Court's order, who also
 3   suggested a compromise after I came up with
 4   just -- you know, I recognize the compromise I
 5   came up with is one compromise.  So I read the
 6   Court's order regarding her suggested compromise
 7   in the footnote, Judge Oliver, and that's why I
 8   e-mailed you to say, What do you-all think about
 9   this compromise of doing the deposition before
10   March 15th so that I could go on my trip?
11              I am also, by the way, happy to do
12   it on a weekend too.
13         MR. RYU:  Are you rejecting the idea
14   that we can work with you on March 15th depo?
15   Now you don't want to take the depo on
16   March 15th anymore?
17         MS. GRANT:  No.  It's not that I don't
18   want to take it on March 15th; but what I'm
19   saying is it's not really a compromise if
20   you-all say we want the date that we want and we
21   want the means that we want, which is the
22   current position, like it's got to be March 15th
23   and it's got to be remote.
24              I said, Well, what about this day?
25              No.
```

1              What about this other day?

2              No.

3              So if you say it's got to be

4    March 15th and it's got to be remote when I want

5    in person and the code calls for in person, it

6    doesn't seem like much of a compromise.

7              MS. CHOI:  I would like to mention that

8    the order we received today, I believe it's

9    Docket Number 35, the courtroom deputy clerk

10   e-mailed us a courtesy copy of it.  This order

11   states, toward the bottom of Page 1, the Court

12   notes that it appears that both parties -- I'm

13   sorry -- both sides agree on the deposition date

14   for Plaintiff of March 15, 2022, and the

15   remaining issue is the format of the deposition;

16   therefore, the parties should expect Plaintiff's

17   deposition to take place on March 15, 2022,

18   unless they agree on a different day during meet

19   and confer discussions.

20             MS. GRANT:  Right.  I'm saying what is

21   the compromise on your part?

22             MR. RYU:  This is a compromise.

23             MS. GRANT:  March 15th remote was the

24   position that you had all along.  In person and

25   a date before March 15th -- well, actually, what

```
 1  your position was, is it had to be March 15th,
 2  17th, or 18th.  That was the e-mail that you
 3  sent on or about March 2nd saying that it had to
 4  be March 15th, 17th, or 18th, and it had to be
 5  remote.  I wanted March 7th; I wanted March 9th.
 6  I wanted a date before my preplanned vacation --
 7  I said vacation as a Freudian slip because I
 8  need one -- my preplanned trip next week.  And
 9  so I have moved the dates to accommodate
10  you-all.
11              And what I'm saying is you had
12  always requested March 15th, 17th, or 18th, and
13  you always requested it remotely.  What is your
14  compromise?
15      MS. CHOI:  Counsel, I think that's an
16  unreasonable request given how COVID is still
17  affecting unvaccinated people at an alarming
18  rate with death.  Not only that, my boyfriend's
19  daughter, who is 8, and who was vaccinated, got
20  COVID.
21      MR. RYU:  Samantha Grant, in order to
22  respond what is compromising from our side, we
23  are compromising a lot to accommodate your
24  schedule when it is you who just forgot to
25  follow up with Plaintiff's depo until the last
```

1  minute.  We offered dates, and you just couldn't

2  do it.  My client is not available for certain

3  dates but he has to compromise because we wanted

4  to give you some dates on the 15th, 17th, and

5  18th so that you could pick one date.

6            When we suggested March 7th -- and

7  what was the other date? -- March 11th, these

8  are the dates that we just cannot do.  We have

9  prescheduled stuff; but in order to compromise

10 or accommodate your schedule, we would go ahead

11 and clean up our schedule.  That was a

12 compromise, and we cut you slack so you can take

13 the Plaintiff's depo.

14            You are crying here telling us

15 that, no, I gave up so much on my side.  So you

16 have to give me some -- I don't know -- some

17 kind of a quid pro quo here.  It's just not the

18 right argument.

19       MS. CHOI:  Especially when it concerns

20 the health and safety of a child.

21       MS. GRANT:  Let me ask you this:  Your

22 client is working, correct?

23       MR. RYU:  You are not here to

24 interrogate us.  Let's meet and confer.

25       MS. GRANT:  Is your client working?  I'm

1    trying to meet and confer about the in-person

2    nature of the deposition.  And as I said in my

3    e-mail that I sent you days ago, I said I'm not

4    insensitive to the COVID issue although the

5    numbers have, thankfully, come way down and

6    restrictions are being lifted because they've

7    come way down.  Courts have lifted the

8    restrictions.  The emergency orders that were in

9    place have been lifted with respect to the

10   judicial system or are about to be lifted.  So

11   we are sort of going back to the

12   living-with-COVID mode as opposed to being

13   locked down and away from people.

14              And so if your position is -- you

15   know, because I also, as a compromise, said we

16   can limit the number of people in the room; we

17   cannot have -- we can have the court reporter be

18   remote.  So that limits, you know, the number of

19   people in the room.  We can, you know, not have

20   multiple people on my team in the room.

21              So I gave you a bunch of things,

22   you know, HEPA air filters, all sorts of things

23   that we can put in place.  But the reason why

24   I'm asking you about whether he is working is

25   because I don't understand if he is out and

1    about in the community and he is working, then

2    how is being in a deposition with a few people

3    any less safe than his day-to-day?

4              Because there are circumstances,

5    like, for example, for me, I was very concerned

6    about COVID.  In the beginning, I was completely

7    locked down.  I didn't go anywhere.  I didn't

8    even go into the street.  And so if somebody

9    asked me for a deposition when I'm actually in

10   lockdown mode and in a bubble, that's one thing.

11   But if I'm out and about and I'm going to the

12   office and I am encountering people and I'm

13   going to the mall and I'm going on vacation,

14   then that's a different argument to then say, I

15   can't be in a room with two other people.

16             So that's why I am asking you

17   whether he is working and whether his job

18   involves him encountering other people.  And

19   it's my understanding as well that his wife is a

20   teacher, so she is working and encountering

21   other people.  What I don't understand is why

22   the deposition in person is any less safe than

23   what he is doing in his day-to-day life.  That's

24   the part I don't understand.

25             MR. RYU:  Are you done, Counsel?

```
 1              MS. GRANT:  Pardon me?

 2              MR. RYU:  Samantha Grant, Counsel, are

 3    you done?

 4              MS. GRANT:  I don't know about done, but

 5    I have finished speaking what I was going to say

 6    just now.

 7              MR. RYU:  Very good.

 8                   My client is working outdoors.  He

 9    is doing his own business.  All of these things,

10    I guess, may be possible.

11                   So let's talk about the bottom line

12    here.  Are you trying to tell us that it has to

13    be an in-person depo?  Because that's going to

14    cut our discussion very short.

15              MS. GRANT:  My preference is --

16              MR. RYU:  I'm not finished.  If you

17    insist on in-person depo on March 15th, you are

18    not going to have Plaintiff produced.  Plaintiff

19    is not going to do in-person depo, period.  So

20    if that's just something -- something of a --

21    fall-apart, your break point, I need to know

22    right now because we can go home now.

23              MS. GRANT:  Well, I think we are

24    supposed to have a meet and confer.

25              MR. RYU:  That's what we are doing.
```

1        MS. GRANT:  Right.  So I'm trying to

2    have a discussion with you to understand the

3    parameters of why the in-person deposition is

4    such a deal breaker other than just the fact

5    that you are saying it's a deal breaker.

6        MR. RYU:  We have been explaining way

7    too many times with way too many issues.  He has

8    little children.  He cannot go on public places

9    to risk his little children.  There's a newborn

10   as well in the family.  So if you do not

11   understand there's a newborn, parents have to

12   take care of their newborn because newborns are

13   very vulnerable, I don't know what I can offer

14   you.  We already explained all of these things,

15   the reason why it has to be remote.

16           So based on the remote deposition,

17   of course we will produce Mr. Ian Lenahan as a

18   favor to you after all of these things that we

19   have to go through.  So please tell me, Counsel,

20   now that if you cannot depose our guy in person,

21   you don't want to take his depo?  Is that your

22   position?

23        MS. GRANT:  So, Mr. Ryu, I was actually

24   speaking when you interrupted me, so I just want

25   to finish my thought.

```
 1              I think that as part of meet and
 2   confer, I was trying to have a discussion around
 3   the parameters because I want to come up with a
 4   mutually acceptable solution.  But I think just
 5   saying we are not going to produce him in
 6   person, period, live with it, I don't think
 7   that's -- I'm trying to figure out whether
 8   that's a position that I want to compromise on
 9   or whether I am going to stand on the
10   application that we filed or what to do.
11              And as I said in my e-mail from the
12   weekend, I don't feel like I have sufficient
13   information as to Mr. Lenahan's community
14   contacts to be able to ascertain whether it's
15   just the deposition he doesn't want to do in
16   person or whether he actually is in some type of
17   bubble where he doesn't encounter people.
18   Because obviously, again, if somebody is in a
19   bubble where they are not encountering people in
20   their day-to-day lives and they are purposely,
21   like, walled off with whoever else is in their
22   bubble and they are not, you know, like,
23   encountering people at work, et cetera, is
24   different.
25              Maybe you can understand that,
```

 1   like, for example, if somebody is, you know,

 2   like, at a party indoors every weekend or going

 3   to bars, to then say, I don't want to go take my

 4   deposition from a room with three people, it

 5   seems inconsistent.

 6              So I'm not saying that's what your

 7   client is doing.  I just used that as an extreme

 8   example to explain or to demonstrate why it is

 9   that I'm trying to see what the contours are of

10   what your client's position is on his working,

11   whether his wife is working and going to school,

12   like, going to her school every day because then

13   she is encountering bunches of people and kids

14   and -- you know, and things are spread around.

15              So I'm trying to figure out what is

16   so unique about this deposition being in person

17   in terms of what your client will be exposed

18   that he is not exposed to on a day-to-day basis.

19   That's what I'm trying to ascertain because it's

20   hard for me to figure out how much to compromise

21   on the in-person, given that I've already

22   compromised on everything else, if I don't know

23   this information, which is why I've been seeking

24   it since the weekend.

25              MS. CHOI:  What's the question?

Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 21 of 69   Page ID #:1177

MEET AND CONFER,  on 03/11/2022                                          Page 17
IAN LENAHAN vs TARGET CORPORATION, et al.

```
 1         MR. RYU:  What's the question?  I don't
 2    understand.
 3         MS. GRANT:  The question is whether --
 4    when your client is working, is he -- for
 5    example, does he encounter other people or is he
 6    in a bubble?  Does he encounter people at his
 7    job?  Does he work with other people?  Does he
 8    encounter people in his job?  Does he encounter
 9    customers in his job?
10         MR. RYU:  Counsel, you already -- when
11    you contact the Court, you're going to have our
12    client in some kind of a court reporter's office
13    where the laptop is provided and you will be in
14    another place to take the remote depo as long as
15    we are also separated from our client.  You said
16    that was fine.  That was what you said, what you
17    argued.  Now you are changing your position
18    going back to argue, I make so much compromise
19    that it has to be -- go to the in-person depo.
20    Is that what you are trying to say?  Because
21    this is not the position that you report to the
22    Court.
23              When you reported to the Court, you
24    said, I am going to take -- I am okay with the
25    remote depo and Ian Lenahan will be placed in
```

1    the third place where you can arrange with the

2    court reporters that he will be at his own desk

3    alone while you are going to be in a different

4    location taking his depo remotely as long as we

5    are in a different place, not in the same space

6    with the plaintiff.  That's what you suggested,

7    and there should be the place where we talk at

8    the meet and confer.  All of a sudden, you are

9    coming back with this idea of, Now that I

10   compromised my vacation, I have to get what I

11   argued in the past so it has to be an in-person

12   deposition.

13            Ms. Grant, that is very

14   unreasonable and it's not going to take us

15   anywhere for the meet and confer purposes

16   because what we understand is this is going to

17   be the remote depo.

18        MS. GRANT:  So I don't know when you say

19   that's what I asked the Court for.  Are you

20   talking about the ex parte application that got

21   filed yesterday?  Mr. Ryu, is that what you are

22   saying?  I don't know what you're saying why I

23   asked the Court for -- that I asked the Court

24   for remote.  What are you referring to?

25        MS. CHOI:  The Court already suggested a

```
 1   remote deposition.
 2           MR. RYU:  Based on your suggestion,
 3   Ms. Grant.
 4           MS. GRANT:  You're saying that -- the
 5   deposition notice that -- I'm not sure what you
 6   are saying.  The deposition notice that I served
 7   was for an in-person deposition and --
 8           MR. RYU:  We will find it.
 9           MS. GRANT:  And I'm looking at my
10   papers.  It says that Target's preference is to
11   take the plaintiff's deposition in person at my
12   office where every attorney and staff member is
13   fully vaccinated, and I'm asking the Court to
14   order him to appear as such.  And if -- only
15   if the Court says it has to be remote, then the
16   parameters of a remote deposition are discussed.
17   So that's why I'm confused by what you are
18   saying.
19           MR. RYU:  It's in your e-mail.  I am
20   going to forward it to you.
21           MS. GRANT:  That was the e-mail that I
22   sent you as a compromise yesterday to see
23   whether you were willing to discuss the
24   parameters and you didn't respond, and so my
25   client filed an ex parte application to compel
```

 1  your client's in-person deposition consistent

 2  with the deposition notice that we served.

 3        MS. CHOI:  Without giving us proper

 4  notice.  But please go ahead.

 5        MS. GRANT:  Well, I gave you notice

 6  because I was trying to avoid filing an ex parte

 7  application.  I e-mailed you shortly after 6:00

 8  to say, Can we do this?  I e-mailed you again

 9  hours later and said, Can we do this?  I was

10  trying to do everything I could to avoid

11  burdening the Court with yet another ex parte

12  application because in my mind, when lawyers are

13  filing ex parte applications or, quite frankly,

14  any discovery law in motion, it reflects poorly

15  on everybody.  It doesn't matter if you're the

16  party filing it or the party opposing it.  It

17  reflects poorly, like why won't these kids play

18  well in the sandbox.

19            And when I got that order today,

20  well, first the e-mail saying, Stop contacting

21  chambers, and then the other orders that came, I

22  was mortified.  This is not what I want my name

23  associated with.  And so I was willing to do

24  everything possible and get my client to do

25  everything possible to avoid filing that

1    ex parte application last night.  And so I

2    waited and waited and waited and followed up and

3    followed up and followed up and you-all were

4    e-mailing me about other stuff but not

5    responding to my e-mail saying, Can we

6    compromise, can we do this, can we do that.

7              So at that point we had to file

8    because you weren't even committed to showing up

9    remote or in person, and so that's why you got

10   the notice so late.  Under normal circumstances,

11   you wouldn't have gotten it then; you would have

12   gotten it earlier.  I mean, hopefully you

13   wouldn't get it at all because there wouldn't be

14   a need for an ex parte application or a motion.

15   But it wasn't like you guys didn't know what was

16   happening.  I have been e-mailing you saying,

17   Can we do this?

18        MS. CHOI:  So you are -- everything you

19   just told us is based on your assumption that we

20   were looking at our e-mail last night, right,

21   when you are e-mailing past 11:00 p.m.?

22        MS. GRANT:  No.  I e-mailed at 6:00 and

23   I e-mailed again a few hours later, and in

24   between I got e-mail messages from you guys.

25   So, yes, I assumed you were on e-mail because I

Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 26 of 69   Page ID #:1182

MEET AND CONFER, on 03/11/2022                                    Page 22
IAN LENAHAN vs TARGET CORPORATION, et al.

1   was getting e-mail messages from you.

2          MS. CHOI:   I didn't e-mail you last

3   night.

4          MS. GRANT:   When I say you, I mean the

5   three counsels that I'm looking at here.   There

6   are three lawyers here.   And Mr. Ryu sent me an

7   e-mail yesterday after the e-mail that I asked

8   can we compromise, can you agree to this, and he

9   sent me other e-mails but did not respond to

10  that e-mail.

11         MR. RYU:   No.   When you called me on my

12  cell out of nowhere, I tried to tell you because

13  you are making everything twisted when you

14  reported to the Court -- I just want to make the

15  record straight, Ms. Grant, that I'm in

16  mediation, I could not talk to you, and you are

17  trying to -- yelling and be talking when I try

18  to hang up the phone.   I couldn't understand any

19  word what you were saying.   That's all I said.

20             Just to make the record clear,

21  that's all I did.   What do you mean by I

22  responded to your e-mail at night?   Because I

23  wouldn't know whether you sent an e-mail at

24  night because I was exhausted.

25         MS. GRANT:   No.   We are talking about

```
 1    two different days.  First of all, the day that

 2    I called you was earlier in the week, I called

 3    you.  I, again, tried to compromise.  I actually

 4    called Ms. Cohen a couple of times at the number

 5    that I said in the e-mail --

 6              MR. RYU:  Please --

 7              MS. GRANT:  Mr. Ryu, will you please

 8    stop interrupting me?  I was speaking.  You keep

 9    interrupting me when I speak.

10              MR. RYU:  Shall we go back to the meet

11    and confer subject?

12              MS. GRANT:  Can you please stop

13    interrupting me.  I really would appreciate it.

14    I let you speak; and even when I disagree with

15    you, I let you finish.  So I really would

16    appreciate it if you would extend me the same

17    professional courtesy.

18              MR. RYU:  I will do that --

19              MS. GRANT:  So can I finish what I

20    was --

21              MR. RYU:  But you interrupting all the

22    time.

23              MS. GRANT:  So can I please finish what

24    I was saying, then?

25              MS. CHOI:  Let the record reflect that
```

```
 1    Ms. Grant also interrupted Mr. Ryu.
 2              You may proceed.
 3         MS. GRANT:  I am trying to get back to
 4    saying what I was saying, Ms. Choi.  You keep
 5    cutting me off.
 6         MR. RYU:  So we --
 7         MS. GRANT:  What I was saying was, you
 8    are conflating different days.  I called you
 9    earlier in the week to try to meet and confer.
10    The phone call lasted all of two seconds when
11    you said, Hello, who is this, and I said, Hi,
12    it's Samantha.  You said, I can't talk; I'm in a
13    mediation, click, and you hung up the phone.
14              I didn't yell at you.  We didn't
15    have a substantive discussion.  All I said was,
16    It's Samantha Grant, and you said, I can't talk,
17    click, and you hung up the phone.  You said, I'm
18    in a mediation, click.  I took you at your
19    words.  I could hear talking in the background.
20              So I assume, if you tell me you are
21    in a mediation and you hang up the phone, you
22    are in a mediation.  I didn't have any problem
23    with that at all.  And then you sent me a
24    follow-up e-mail saying, Couldn't talk; I was in
25    a mediation.  I had no problem with that at all
```

 1   either.

 2                   Then I sent you an e-mail again

 3   trying to compromise about the deposition

 4   saying, Can we do it on the 15th but in person,

 5   and didn't get any traction.  So I sent you the

 6   deposition notice and I canceled my meeting.

 7   That was earlier in the week.  I'm talking about

 8   yesterday because Ms. Choi raised the issue

 9   about why the ex parte notice came so late.

10                   And so now I'm talking about

11   yesterday, which is not the day you and I spoke

12   on the phone, Mr. Ryu.  Yesterday I e-mailed you

13   to ask you about the Court's proposed compromise

14   of whether we could do the -- an earlier date

15   that allowed me to go on my trip as previously

16   scheduled but do it remote as a compromise.

17                   And so you e-mailed me back pretty

18   quickly to say you could not do March 14th

19   because you were in a mediation.  And then I

20   e-mailed you back pretty quickly to say, Would

21   you do March 15th under these parameters.  I

22   also e-mailed you also to say, you know, What

23   are your thoughts about a remote deposition,

24   would it be this or would it be that, like, you

25   know, do you intend to be in the same room with

1   the deponent.

2              So I asked you some questions

3   because I was trying to meet and confer about

4   what the parameters would be.  And I didn't get

5   any traction there.  So I thought, well, let me

6   suggest, like, if we could do it on March 14th,

7   here are some parameters possibly for a

8   remote-type deposition.  And then you said you

9   couldn't do March 14th.  I said, Well, would you

10  do the same parameters if it was on March 15th,

11  and there was no response.

12              And so I followed up again saying,

13  Would you please respond, here, you know, to the

14  e-mail about would you do these parameters.  And

15  in between the time I sent the first e-mail

16  saying, Would you do the 15th with these

17  parameters, and the time I sent the second

18  e-mail saying, I would appreciate a response, I

19  received an e-mail from Mr. Ryu.

20              So to your question, Ms. Choi,

21  about how do I know that you-all were even

22  online looking at e-mail, I got an e-mail from

23  your office.  That's why I said what I said,

24  that I was trying to meet and confer.  I was

25  sending e-mail messages -- I got an email

```
 1  message on a different subject after I sent an

 2  e-mail asking you about the deposition.  And so

 3  I waited again and I waited and I followed up

 4  and I waited again because I was trying to avoid

 5  having to do an ex parte application.  I didn't

 6  even want to give you notice of an ex parte

 7  application let alone file one because I was

 8  trying not to have things ratchet up even higher

 9  than they are.

10            And so that's why the application

11  got filed so late in the day and that's why you

12  got your notice so late in the day, because I

13  was trying to avoid doing it and I was hoping

14  against hope that I would get a response to my

15  e-mail, which is why I kept saying too, We need

16  to reach agreement today, we need to reach

17  agreement today, because I did not want to have

18  to file any law in motion because, again,

19  whether you are on the receiving end as an

20  opposition or whether you are filing it, it

21  reflects poorly on counsel, all counsel, in my

22  estimation.

23            MS. CHOI:  Are you done?

24            MS. GRANT:  No, I'm not.

25            MS. CHOI:  Go ahead.
```

1              MS. GRANT:  So I go back to we then had

2     to expend the effort and the time and the

3     resources to file the application and so we

4     filed it based on the notice, and all the

5     notices that we have ever served since the COVID

6     restrictions were lifted have said in-person

7     deposition.  The original notice that we served

8     way back last year when we were trying to take

9     the deposition last year was served in a way

10    that if the COVID restrictions require us to do

11    it remotely, then we will do it that way.  But

12    once they were lifted, we no longer put that in

13    the deposition notices.

14              And so each and every deposition

15    notice I've served in 2022 have said in-person

16    deposition, and that's what we asked the Court

17    for.  We asked the Court to order an in-person

18    deposition.  So it's not -- I don't think it's

19    accurate to say I asked the Court for a remote

20    deposition.

21         MS. CHOI:  Okay.  So I understand you

22    don't have my personal number but you have

23    Mr. Ryu's cell phone number, and I believe the

24    phone number you have for Ms. Cohen is actually

25    her home landline.

```
 1              Did you call them last night when

 2   you were not getting a response from Mr. Ryu?

 3              MS. GRANT:  I called Mr. Ryu before last

 4   night and he hung up the phone and never called

 5   me back.  If I call somebody and they hang up

 6   the phone and they say they are too busy to

 7   talk, I expect them to actually call me back

 8   since I initiated the call.  And I sent e-mail

 9   messages saying, I have been trying to reach you

10   by phone.

11              So why would I continue to call

12   you-all when I have called you, spoken to you,

13   you said you are too busy to talk, which I don't

14   begrudge you.  I assume that you were in a

15   mediation and that you were too busy to talk.

16   But if I call you and you say you are too busy

17   to talk and I call you and I don't get you and I

18   leave messages and I send e-mails saying, I

19   tried to reach you by phone, then the question

20   is why didn't you-all call me back?

21              I've been trying to call you and

22   speak on the phone all week.  I've called you

23   repeatedly.  I e-mailed you to tell you I'm

24   calling you.  I said in the e-mail messages that

25   I think compromises are best reached over the
```

 1  telephone.  It's hard to compromise by e-mail.

 2              So, Ms. Choi, I don't understand

 3  your question about why I wouldn't call yet

 4  again when I have been calling you all week and

 5  nobody has returned my phone call.

 6       MS. CHOI:  I think I have got a lot of

 7  objecting when you say you were calling us all

 8  week.

 9       MS. GRANT:  I've been calling.  I can

10  show you the phone.  Like, literally, I can show

11  you my phone.

12       MS. CHOI:  You could have called our

13  office.  I was in the office as of 6:00 o'clock

14  yesterday.  You could have called our office and

15  asked for me.  You didn't do that.

16       MS. GRANT:  Well, why wouldn't you --

17       THE COURT REPORTER:  One at a time.

18       MS. CHOI:  I was still speaking.

19              Let the record reflect that I never

20  received a phone call from Ms. Samantha Grant to

21  give us ex parte notice prior to 6:00 p.m. on

22  March 10, 2020.

23       MS. GRANT:  I wasn't giving -- why would

24  I have done that?  I wasn't given you ex parte

25  notice then because I wasn't going to be filing

iDepo
Reporters

 1   a motion.  I was calling -- I was calling -- I

 2   was e-mailing you guys trying to compromise.  I

 3   sent you an e-mail saying, I have been calling

 4   you to try to compromise.  Can we compromise?  I

 5   literally called you and then sent in writing

 6   saying that I'm calling you trying to

 7   compromise.

 8              Like, I don't know what standard

 9   you are holding me to, but I think it's really

10   unfair and it's been unfair that you continue to

11   hold me to a standard to which you are not

12   holding yourself.  You knew that we were trying

13   to get these things done.  You knew that I was

14   trying to compromise.  You knew that I was

15   calling you.  It's not like you didn't know.  I

16   sent e-mail messages saying, I am trying to

17   reach you.  So why would you not call me back?

18         MS. CHOI:  I honestly didn't believe

19   that you were trying to take this deposition in

20   this date because you didn't notice Plaintiff's

21   deposition until you were served with the

22   deposition noticed for Francis Angulo and the

23   witness today.

24         MS. GRANT:  That's because we agreed to

25   hold the depositions until after the mediation

 1   and that we would meet and confer on the date.

 2          MR. RYU:  That's what happened.

 3          MS. GRANT:  That's what we agreed to,

 4   let's not do the depositions before the

 5   mediation and let's meet and confer on the dates

 6   and Plaintiff's deposition would go first.

 7          MR. RYU:  That's what happened.

 8          MS. GRANT:  So why after reaching that

 9   agreement would I unilaterally notice

10   Plaintiff's deposition?

11          MS. CHOI:  These depositions took place

12   after the mediation.

13          MS. GRANT:  No.  You noticed the

14   depositions before the mediation and I noticed

15   the deposition before the mediation; but you

16   noticed them unilaterally, which is in breach of

17   our agreement that we would table the

18   depositions until after the mediation and then

19   we would meet and confer about the depositions

20   to come up with mutually agreeable dates.  So

21   why would I then serve a deposition notice

22   unilaterally when we have agreed to do

23   otherwise?

24          MR. RYU:  We gave you the dates.  You

25   didn't follow up.

1          MS. GRANT:   No.   That's not true,

2     Mr. Ryu.

3          MR. RYU:   It is true.

4          MS. GRANT:   We can print out the e-mails

5     on January the 28th.   It actually was confirmed

6     in writing.   You and I spoke, and then it was

7     confirmed in writing.   This was before Ms. Choi,

8     I think, was involved in the case; and it was

9     you and Ms. Cohen, and we confirmed in writing.

10    So the record is clear.

11              But I don't know -- and most of the

12    record is in writing, but I don't know what's

13    served by spending the time -- especially when

14    Ms. Waters has to go in nine minutes -- spending

15    the time rehashing, you know, what happened even

16    before the mediation, which was two weeks ago.

17         MS. CHOI:   So I already rescheduled a

18    deposition in order to accommodate March 15th,

19    and I can't do that in the same case for

20    March 14th.   And I don't believe Mr. Ryu and

21    Ms. Cohen can reschedule the mediation that's

22    already been on calendar for months for Monday.

23         MS. GRANT:   I'm not even asking you

24    about March 14th anymore.

25         MS. CHOI:   March 15th, remote

 1   deposition.

 2          (Speaking simultaneously, unreportable.)

 3          MS. CHOI:  We are not -- I'm not going

 4   to be in the same room as our client.  I don't

 5   want to be near anyone.

 6          MS. GRANT:  But that's not what you told

 7   the Court.

 8          MS. CHOI:  What did I tell the Court?

 9          MS. GRANT:  You told the Court that it

10   was your client's issue, and now you are

11   changing it.

12          MS. CHOI:  We already told the Court

13   that our office also had an outbreak.  I work

14   from home for the most part.  Okay?  And I'm

15   going to be defending the deposition and I am

16   not going to be near our client.  He is going to

17   be at his home.  Okay?

18          MS. GRANT:  I haven't agreed to that.

19   But are you saying -- because every deposition

20   we have had so far has been two lawyers and

21   today we had three lawyers at the deposition,

22   and it was just a third-party deposition and

23   three of you showed up.  And two of you were

24   actually -- Ms. Cohen objected at a certain

25   point in time; but two of you, and sometimes

1    three of you, were speaking, interjecting, and

2    making objections at the deposition.  So you are

3    saying that you are going to be defending the

4    deposition.  Does that mean that Mr. Ryu and

5    Ms. Cohen will not be at the deposition?

6            MS. CHOI:  Honestly, given your conduct

7    on Monday, we are here all today.

8            MS. GRANT:  Well --

9            MS. CHOI:  I'm talking, Ms. Grant.  You

10   were not even letting me go off the record to

11   take a break and you deny that you are wasting

12   our money.  Actually, we pay for transcript per

13   page.  So if you are holding everybody hostage

14   on the record, the plaintiff will have to pay

15   for that transcript.  Okay?

16           MS. GRANT:  No.

17           MS. CHOI:  I don't know what agreement

18   you have with another reporting company; but if

19   you do, please let us know.  That's not how it

20   works for us.

21           MS. GRANT:  That's actually not

22   accurate.

23           MS. CHOI:  I am not done.

24           MS. GRANT:  Oh.  You asked me a

25   question.  I thought you wanted me to answer it.

 1  Sorry.  Go ahead.

 2          MS. CHOI:  So that's why we are here,

 3  because of what happened, your conduct on

 4  Monday.

 5          MS. GRANT:  That's not true.  And

 6  thankfully the Court has a copy of the

 7  transcript, which --

 8          MS. CHOI:  This is not going anywhere.

 9  So we are going to make a compromise that we are

10  going to produce our client on March 15th

11  remotely.

12          MS. GRANT:  That's not a compromise.

13  That's the position you have held the whole

14  time.  That's not a compromise.

15          MR. RYU:  It is a compromise.

16          MS. GRANT:  That's not a compromise.

17          MS. CHOI:  It is a compromise.

18          MR. RYU:  I am also looking at the

19  e-mail chain that you just mentioned.  For the

20  record, what Ms. Grant told us about she

21  contacted the Court, sent an e-mail, that is

22  all wrong.

23          MS. GRANT:  Say that again.  I didn't

24  understand what you just said.

25          MR. RYU:  I just want to put it on the

Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 41 of 69   Page ID #:1197

MEET AND CONFER,  on 03/11/2022                                    Page 37
IAN LENAHAN vs TARGET CORPORATION, et al.

 1  record.

 2        MS. GRANT:  What is wrong?  What I told

 3  you about what?

 4        MR. RYU:  The e-mail communication that

 5  you referred to us just now what you did

 6  yesterday, it's all wrong.  I'm looking at it,

 7  and she got all the timings wrong.

 8        MS. GRANT:  No.  I'm looking at it too.

 9        MR. RYU:  You are interrupting me.

10        MS. GRANT:  Well, I'm just trying to get

11  clarification.

12        MR. RYU:  You are interrupting me.

13          So what I'm looking at is 6:20,

14  6:11.  6:20 is the last e-mail from Ms. Samantha

15  Grant.  She is -- keep on e-mailing us starting

16  9:46, but no one from our office returned this

17  unlike what she said.

18            Now, let's go back to the meet and

19  confer discussion.  We are doing this under the

20  Court's order to meet and confer and find a

21  resolution to produce Plaintiff's deposition.

22  We have been trying to work; but for the record,

23  I want to also make sure most of the time it was

24  Ms. Grant talk and she has been -- and I give

25  her that --- that she has been yelling for

 1   30 minutes nonstop.

 2           MS. GRANT:  That's not true.

 3           MR. RYU:  So it's difficult to maintain

 4   civil communication here.  But this is the

 5   summary that Ms. Choi tried to say and Ms. Grant

 6   start interrupting her.

 7           MS. GRANT:  That is not true.  I have

 8   not been yelling at all.  And exactly that's why

 9   I wanted to record this session.  I asked you

10   all if we could record this on Zoom because we

11   are in a Zoom meeting.  And I recorded --

12   actually paid for the cost of recording that

13   last deposition, Target paid -- by a

14   videographer precisely so that you-all would

15   stop making false accusations about me.

16               In fact, Ms. Choi, said that I was

17   despicable, that she can't think of more

18   despicable conduct of an officer of the court.

19   When I said that I changed my flight, she said I

20   was lying, accused me without foundation, sent

21   me an e-mail in writing saying, You lied about

22   ever having to leave on a trip on May [sic]

23   15th; I can't imagine more despicable conduct of

24   an officer of the court.  That's without

25   foundation.

```
 1            MR. RYU:  This is not going anywhere.

 2            MS. GRANT:  So you all keep falsely

 3     accusing me, even when it's demonstrably false,

 4     which is why I said to you before we started

 5     this meet and confer, I know we have a court

 6     reporter here but can we also do this on Zoom,

 7     because I wanted a recording of the audio

 8     because I knew that at some point you guys would

 9     again falsely accuse me of something.  And you

10     are the ones who objected to audio.  I wanted

11     audio.  I asked for audio.  I said, Can we

12     please record this meet and confer by Zoom.  We

13     are all on Zoom right now.  It's very easy for

14     us to press record.  And you objected to

15     pressing record and recording this.

16              So I'm not going to stand by and

17     let you say that I was yelling when I wasn't,

18     when you wouldn't let me get the proof and you

19     are the ones that objected to having this

20     recorded.

21            MS. CHOI:  Well, you mentioned earlier

22     going on vacation, preplanned vacation, Counsel.

23            (Speaking simultaneously, unreportable.)

24            MS. GRANT:  I said that today as a

25     Freudian slip because you said I was a
```

Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 44 of 69   Page ID #:1200

MEET AND CONFER, on 03/11/2022                                      Page 40
IAN LENAHAN vs TARGET CORPORATION, et al.

 1   despicable officer of the court and that I had

 2   not ever planned to leave on March the 15th.

 3   That's what you wrote me, Ms. Choi.

 4          MR. RYU:  Counsel, we let you speak.

 5   Can you stop interrupting us?  We want to

 6   respond.  You are talking 30 minutes nonstop

 7   yelling.  Can you give us a chance to talk?

 8          MS. GRANT:  I am not yelling.  But you

 9   know what?  I will submit to the Court -- I will

10   submit to the Court the audio of the deposition

11   that we have just had with the third-party

12   deponent so the Court can see for herself who

13   actually does the yelling when we are actually

14   recording.

15          MR. RYU:  We have one minute left, so

16   this is not going anywhere.  It's not

17   productive.  So this is what I want to tell you.

18   We agree with remote deposition of our client as

19   a compromise.  And we will have my client,

20   Plaintiff, available for March 15th.  In a third

21   place, my client goes.  Defense counsel is going

22   to take the depo.  It's not going to be in the

23   same location; but she will be somewhere else,

24   like in her office from home.  So we are not

25   going to be in the same location with our client

```
 1   and we will be defending the depo from somewhere
 2   else in the third place.  That's what we
 3   offered.  That's what I think we agreed upon;
 4   but if you disagree, I think the conversation is
 5   over.  And the court reporter has to leave in
 6   one minute.
 7           MS. GRANT:  We would like an in-person
 8   deposition, as I previously stated.  But as a
 9   compromise, we offered yesterday to have the
10   deponent in the court reporter's office.  If the
11   deponent is in the court reporter's office and I
12   am not in the court reporter's office and
13   Ms. Choi gets to defend the deposition from
14   home, why is that a problem?
15           MS. CHOI:  You want our client to be
16   your office without us?
17           MS. GRANT:  In the court reporter's
18   office, I said.
19           MR. RYU:  You mean at the third place,
20   not in your office, right?
21           MS. GRANT:  Correct, like what I said in
22   the e-mail yesterday.
23           MR. RYU:  Counsel, stop yelling, please.
24           MS. GRANT:  I'm not yelling.  Please
25   stop saying that I'm yelling when I'm not.  I'm
```

1  happy to press -- can we please Zoom record now?

2  I'm happy to record this so that it's clear that

3  I'm not yelling.

4        MR. RYU:  Of course, when we turn it on,

5  you're not going to yell anymore.

6        MS. GRANT:  I'm going to speak the same

7  way I've been speaking.  I offered to do this by

8  Zoom.

9        MR. RYU:  Karen, I think you have to

10 leave now.  It's 8:01.  I think both parties'

11 position have been clearly recorded.  We failed

12 to reach a resolution in terms of the March 15th

13 depo, so I think this transcript has to be

14 produced to us early in the morning on Monday so

15 that we can submit it to the Court.

16        MS. CHOI:  No.  We just have to submit a

17 status report by -- a joint report by Monday

18 morning at 9:00 a.m.  If we cannot agree on a

19 joint report, then we have to wait for the

20 transcript to be completed.

21        MR. RYU:  Right.

22             Karen, it doesn't have to be, like,

23 rough tonight.  Maybe if you can send us

24 something of this discussion by sometime on

25 Monday, that would be really appreciated.  Can

1    you please do that?

2              MS. GRANT:  So --

3              MR. RYU:  I'm asking Ms. Waters.  Stop

4    interrupting, please.

5              THE COURT REPORTER:  I can get you the

6    final Monday.  I can get you a rough.  Whatever

7    you need.

8              MR. RYU:  Monday morning final is fine.

9              MS. GRANT:  So I don't think -- I mean,

10   we are stopping out of respect for the court

11   reporter because she only has available until

12   8:00; and it's 9:00, actually, where she is.

13   But we haven't actually complied with the Court

14   order, which is not just about the deposition;

15   it's about I read it as all of the pending

16   motions.  And I don't think you have answered my

17   question about, you know, your client being in

18   the court reporter's office for the deposition.

19              So I don't think this is -- I think

20   this is artificially truncating the meet and

21   confer and I think that we should make

22   arrangements to continue the meet and confer to

23   talk about all the pending motions and to

24   discuss how to get these pending motions off the

25   Court's docket so that the Court doesn't have to

1   deal with these two pending ex parte

2   applications.  I think the Court would be very

3   happy for us to do that, and I don't think that

4   we should truncate our meet and confer efforts

5   when we have two days in front of us before

6   Monday morning because Ms. Waters has been

7   working, you know, all day and has to go now.  I

8   just don't think that excuses us of our

9   obligations to complete the meet and confer

10  process, and I am perfectly capable to complete

11  the process.

12          I suggested -- before we reached

13  this stage at 8:00, I raised the issue of having

14  a court reporter available after the deposition.

15  Early on in the deposition, I suggested that we

16  get a backup court reporter so that after the

17  deposition, we could have a court reporter to do

18  the deposition.  Counsel wanted to not get a

19  backup court reporter at that time and to wait

20  and see.

21          Ms. Waters made it very clear that

22  she has to leave at 8:00.  I again said, Should

23  we get a backup court reporter now, because if

24  we wait until the time Ms. Waters has to leave,

25  then it's going to be hard to get a court

 1   reporter to then take over.  So --

 2          MR. RYU:  No.  I think.

 3          MS. GRANT:  -- we are in this situation

 4   now.  Ms. Waters has to go.  We are actually

 5   four minutes past the time --

 6          (Speaking simultaneously, unreportable.)

 7          THE COURT REPORTER:  One at a time.  One

 8   at a time.

 9          MS. GRANT:  We should try to end this;

10   but as officers of the Court who have been

11   ordered by the Court to do something, I don't

12   think it's appropriate.  And I do not want to be

13   in the position of saying to the Court, We did

14   it for an hour, much of which was spent

15   replowing old ground about who did what to whom,

16   and that we only did it for an hour, we only

17   discussed one of the two pending motions on her

18   docket and then we took the rest of the weekend.

19   I do not want to be in that position.

20              If you-all are fine with it, then I

21   want it noted for the record that it's over my

22   objections that we end the meet and confer and

23   don't try to take it up again at some point

24   before we have to report back to the court.

25          MR. RYU:  I agree.  Discussion -- a meet

 1  and confer like this with you, it's really not

 2  going to be productive.  I would rather want to

 3  bring this to the judge and then have the judge

 4  actually review this transcript.

 5              So, Counsel, do you agree to go off

 6  the record so that Ms. Waters can be released?

 7       MS. GRANT:  I agree to go off the record

 8  so that she can be released, but I don't think

 9  we have exchanged enough substantive discussion

10  about both the pending motions, one of which we

11  haven't even discussed at all.

12       MR. RYU:  Because you talk all the time.

13  That's why.

14       MS. GRANT:  I wasn't finished.

15       MS. CHOI:  By the way -- our opposition?

16       MS. GRANT:  The ECF system was down

17  today.  They kept e-mailing us to say it's going

18  to be up and it's been down.  It's a national

19  outage.

20       THE COURT REPORTER:  Ms. Choi, could you

21  please repeat what you said?

22       MS. CHOI:  I said did you file an

23  opposition to our motion.

24       MS. GRANT:  So we are supposed to

25  discuss both pending motions and we haven't

1    discussed one of them.  So is it your position

2    that we are going to not discuss the matters

3    that the Court told us to discuss?  Ms. Choi is

4    on the phone now and Mr. Ryu walked away, so I

5    guess I'm just here by myself.

6                 Ms. Waters, I really apologize.

7    Would you mind indulging us for just a few more

8    minutes to wrap this up?

9           THE COURT REPORTER:  If you're actually

10   going to wrap it up in five minutes, I'll give

11   you five minutes.

12          MS. GRANT:  I really appreciate it,

13   Ms. Waters.

14                 Ms. Choi, is it your position that

15   we are not going to talk about the other pending

16   ex parte application?

17          MS. CHOI:  We should.

18          MS. GRANT:  When did you want to do

19   that?

20          MS. CHOI:  I don't know.  I have to wait

21   for Mr. Ryu, but I believe he has to move his

22   car.

23          MS. GRANT:  Well, if he just walked out

24   to go move his car, he is probably not going to

25   be back in the less than five minutes that we

Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 52 of 69   Page ID #:1208

MEET AND CONFER, on 03/11/2022                                    Page 48
IAN LENAHAN vs TARGET CORPORATION, et al.

 1   have with Ms. Waters.

 2             So, I mean, you are counsel on this

 3   case.  You have been running the depositions,

 4   et cetera.  So do you have the ability to meet

 5   and confer without Mr. Ryu?

 6        MS. CHOI:  You know what?  I think it

 7   would help to have an agenda because we are not

 8   focusing on what we need to meet and confer

 9   over.

10        MS. GRANT:  Well, we are talking about

11   two things.  We are talking about the contours

12   of the deposition.  And I'm asking you, what

13   would be the problem with your client being at

14   the court reporter's office?

15        MS. CHOI:  If he does not want to come

16   into contact with other people who he doesn't

17   know were vaccinated, what makes you think he

18   wants to come in contact with people in the

19   court reporter's office?  Are we talking about

20   just one person or...

21        MS. GRANT:  Yes.  One person.

22        MS. CHOI:  We have to ask him, actually.

23   That's not something I can say on his behalf

24   without asking him.

25        MS. GRANT:  Okay.  Well, can you ask him

1   and then we pick this up again tomorrow, then?

2          MS. CHOI:  I have a packed schedule

3   tomorrow, actually.

4          MS. GRANT:  Do you want to pick it up on

5   Sunday, then?

6          MS. CHOI:  Sunday, it has to be

7   afternoon.

8          MS. GRANT:  That's fine.  What time?

9          MS. CHOI:  Probably 5:00 p.m. or later.

10          MS. GRANT:  That's fine.

11              Do you want to do it?  We have to

12   come up with a time because we have to get a

13   court reporter.  So do you want to do it at

14   5:00 p.m.?

15          MS. CHOI:  Actually, I would prefer that

16   Mr. Ryu decide on the time.

17          MS. GRANT:  Okay.

18          MS. CHOI:  I know I have been

19   participating in depos; but I only started

20   working here, like, a month ago.  I am not as

21   well-versed in the facts as Mr. Ryu or

22   Ms. Cohen.

23          MS. GRANT:  Right.  I mean, I think we

24   are only going to be talking about the stuff

25   that's happened since you have been involved in

1   the case.  I don't think we are going to be

2   talking about the facts of --

3             MS. CHOI:  But, Ms. Grant, you get

4   sidetracked like going to what was e-mailed back

5   in, you know, October 2021.  I don't have any --

6   like, I haven't gone through all the e-mails

7   yet.

8             MS. GRANT:  But what I'm saying is

9   that's not what we should be talking about.

10  That was my point.  You asked me why I didn't

11  serve a deposition notice earlier, and I had

12  mentioned to you that we had and why I waited to

13  serve the next one.  Because the agreement --

14  the only reason I brought that up is because you

15  asked me the question about why I didn't serve

16  it earlier.

17            My point is that you don't have to

18  talk about all of that stuff.  Like, I don't

19  think there's any point in talking about how we

20  got here.  I think we should be looking forward

21  to how do we resolve it, not how did we get

22  here.  We already know how we got here.  There's

23  a record.  I'm talking about resolving the

24  pending applications and discussing how to

25  resolve those, and I don't think it involves a

1  discussion of anything that happened prior to,

2  quite frankly, this week because it involves the

3  Monday deposition and it involves the upcoming

4  depositions.

5              I'm not even sure of the point of

6  the motion anymore given the fact we had this

7  deposition taken already today.  So I'm not even

8  sure what it's directed at.  It was actually

9  somewhat vague.

10             But in any event, we are supposed

11  to meet and confer on it.  And you have agreed

12  to ask your client about doing the deposition at

13  the court reporter's office.  Again, if I had

14  some sense of the contours of his comfort level

15  or what he has been doing or what he is

16  comfortable doing, then it would help with the

17  meet and confer process.  And I think in asking

18  for relief from the Court from what the code

19  provides, which is for in-person depositions, I

20  think, you know, it warrants some explanation.

21             And certainly in the motions that

22  I've seen that relate to in-person depositions,

23  some of which were filed in the height of COVID,

24  seem to at least have an analysis of what the

25  situation is for this particular person and

1    whether they are, you know, out and about,

2    because I certainly have had depositions ordered

3    by Courts, you know, for it to be in person.

4    But there's an analysis of what the person's

5    circumstances are.

6              And, again, as I said from the

7    beginning, I don't know anything about his

8    circumstances, other than he has a small child,

9    which I am definitely sensitive to; but I just

10   don't have a sense of, you know, if he is out

11   and about, if he's going to the store, if he's

12   going to restaurants, et cetera, like, whether

13   being in a room with one person with an air

14   filter socially distanced is something that is

15   more risky than whatever he is doing already.

16             So I'm happy to continue to talk.

17   I'm happy to compromise.  I'm happy to deal with

18   the other pending motions.  And I think it

19   behooves us as officers of the court to at least

20   try to redeem whatever modicum we have left of

21   professionalism for the Court and not just show

22   up with a report or sending in a report to say

23   we didn't get it done.  Like, I just don't think

24   it's appropriate and I don't practice law that

25   way.  And I don't think that we should.

Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 57 of 69   Page ID #:1213

MEET AND CONFER, on 03/11/2022                                    Page 53
IAN LENAHAN vs TARGET CORPORATION, et al.

```
 1              That order that we got today in
 2   that e-mail from the Court, I never want to see
 3   anything like that ever again.  I don't take it
 4   lightly at all.  And I really implore you both,
 5   or all three of you, to spend more time to try
 6   to resolve these issues so that we can get these
 7   things off of the Court's docket.
 8              MR. RYU:  Ms. Choi --
 9              MS. GRANT:  I actually wasn't finished.
10   Mr. Ryu, while you were gone, Ms. Choi and I
11   agreed to speak again over the weekend.  And she
12   said --
13              MS. CHOI:  We did not.
14              MS. GRANT:  -- that Sunday is better.
15              THE COURT REPORTER:  One at a time.
16              MS. CHOI:  I asked to confer with
17   Mr. Ryu because I do not believe that I am as
18   well-versed as Mr. Ryu or Ms. Cohen with the
19   history of this case because I started nearly a
20   month ago and I don't know the entire history.
21   And if Ms. Grant goes into whatever happened
22   prior to February, I wouldn't have an answer for
23   that.
24              MR. RYU:  Ms. Choi, that's fine.
25                   Ms. Waters, this meet and confer
```

1  conversation is over.  We already made ourselves

2  clear.  So put it on the record even, Young W.

3  Ryu holds this meet and confer process over

4  because this is really not productive.  She has

5  been nonstop lecturing us for one hour and it's

6  not going anywhere.  So I would rather submit

7  this transcript to the Court as the Court

8  ordered so that we can get some direction from

9  the Court.

10             And the meet and confer, again,

11  during Saturdays and Sundays, from the way that

12  you behave and the way that it happened in the

13  last one hour, no, Ms. Grant, I'm not going to

14  engage in an important meet and confer with you.

15  Let's go ahead and bring this to the Court and

16  get the Court's direction.

17             Ms. Waters, we are leaving.  Okay?

18             Henna, Sarah, we can go.  Let's

19  just go ahead and leave.  It's done.

20             MS. CHOI:  Okay.

21             MR. RYU:  Thank you so much, Ms. Waters.

22             MS. COHEN:  Thank you, Ms. Waters.

23             MS. CHOI:  Thank you.

24             MS. GRANT:  Thank you.

25             THE COURT REPORTER:  Thank you,

iDepo
Reporters

Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 59 of 69   Page ID #:1215

MEET AND CONFER,  on 03/11/2022                                          Page 55
IAN LENAHAN vs TARGET CORPORATION, et al.

1    everybody.

2              Ms. Grant, you need a copy of this

3    transcript, I presume?

4         MS. GRANT:  Yes.

5                 (WHICH WERE ALL THE PROCEEDINGS

6                  HAD IN THE ABOVE-ENTITLED CAUSE

7                  ON THIS DATE.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

iDepo
Reporters

```
 1                           REPORTER'S
                 CERTIFICATE
 2
         I, KAREN WATERS, Registered Professional
 3  Reporter, do hereby certify that the meet and
    confer proceeding was taken in machine shorthand
 4  by me at the time and place and aforesaid was
    thereafter reduced to typewritten form; that the
 5  foregoing is a true transcript of the questions
    asked, testimony given, and proceedings had.
 6
         I further certify that I am not employed
 7  by, related to, nor of counsel for any of the
    parties herein, nor otherwise interested in the
 8  outcome of this litigation.

 9       IN WITNESS WHEREOF, I have affixed my
    Signature this 14th day of March 2022.
10

11

12

13       _____
                 Karen Waters
14               Registered Professional Reporter

15

16

17

18

19

20

21

22

23

24

25
```

MEET AND CONFER,  on 03/11/2022
IAN LENAHAN vs TARGET CORPORATION, et al.

Index: 1–behave

## 1

**1** 8:11
**10** 30:22
**11:00** 21:21
**11th** 10:7
**14th** 25:18 26:6,9 33:20,24
**15** 8:14,17
**15th** 6:2,4,8,12 7:10,14,16,18,
22 8:4,23,25 9:1,4,12 10:4
13:17 25:4,21 26:10,16 33:18,
25 36:10 38:23 40:2,20 42:12
**17th** 9:2,4,12 10:4
**18th** 9:2,4,12 10:5

## 2

**2020** 30:22
**2021** 50:5
**2022** 8:14,17 28:15
**28th** 33:5
**2nd** 9:3

## 3

**30** 38:1 40:6
**35** 8:9

## 5

**5:00** 49:9,14

## 6

**6:00** 20:7 21:22 30:13,21
**6:11** 37:14
**6:20** 37:13,14

## 7

**7th** 9:5 10:6

## 8

**8** 9:19
**8:00** 43:12 44:13,22
**8:01** 42:10

## 9

**9:00** 42:18 43:12
**9:46** 37:16
**9th** 9:5

## A

**a.m.** 42:18
**ability** 48:4
**acceptable** 15:4
**accommodate** 9:9,23 10:10
33:18
**accurate** 28:19 35:22
**accusations** 38:15
**accuse** 39:9
**accused** 38:20
**accusing** 39:3
**affecting** 9:17
**afternoon** 49:7
**agenda** 48:7
**agree** 8:13,18 22:8 40:18
42:18 45:25 46:5,7
**agreeable** 32:20
**agreed** 6:15 31:24 32:3,22
34:18 41:3 51:11 53:11
**agreement** 27:16,17 32:9,17
35:17 50:13
**ahead** 10:10 20:4 27:25 36:1
54:15,19
**air** 11:22 52:13
**alarming** 9:17
**allowed** 25:15
**analysis** 51:24 52:4

**Angulo** 31:22
**anymore** 7:16 33:24 42:5
51:6
**apologize** 47:6
**appears** 8:12
**application** 6:20 15:10 18:20
19:25 20:7,12 21:1,14 27:5,7,
10 28:3 47:16
**applications** 20:13 44:2
50:24
**appreciated** 42:25
**argue** 17:18
**argued** 17:17 18:11
**argument** 10:18 12:14
**arrange** 18:1
**arrangements** 43:22
**artificially** 43:20
**ascertain** 15:14 16:19
**assume** 24:20 29:14
**assumed** 21:25
**assumption** 21:19
**attorney** 19:12
**audio** 39:7,10,11 40:10
**avoid** 20:6,10,25 27:4,13

## B

**back** 6:7 11:11 17:18 18:9
23:10 24:3 25:17,20 28:1,8
29:5,7,20 31:17 37:18 45:24
47:25 50:4
**background** 24:19
**backup** 44:16,19,23
**bars** 16:3
**based** 14:16 19:2 21:19 28:4
**basis** 16:18
**beginning** 12:6 52:7
**begrudge** 29:14
**behalf** 48:23
**behave** 54:12



Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 62 of 69   Page ID #:1218

MEET AND CONFER, on 03/11/2022                                          Index: behooves–court
IAN LENAHAN vs TARGET CORPORATION, et al.

**behooves** 52:19

**bottom** 8:11 13:11

**boyfriend's** 9:18

**breach** 32:16

**break** 13:21 35:11

**breaker** 14:4,5

**bring** 6:6 46:3 54:15

**brought** 50:14

**bubble** 12:10 15:17,19,22 17:6

**bunch** 11:21

**bunches** 16:13

**burdening** 20:11

**business** 6:23 13:9

**busy** 29:6,13,15,16

━━━━━━━ **C** ━━━━━━━

**calendar** 33:22

**call** 24:10 29:1,5,7,8,11,16,17, 20,21 30:3,5,20 31:17

**called** 22:11 23:2,4 24:8 29:3, 4,12,22 30:12,14 31:5

**calling** 29:24 30:4,7,9 31:1,3, 6,15

**calls** 8:5

**canceled** 25:6

**capable** 44:10

**car** 47:22,24

**care** 14:12

**case** 33:8,19 48:3 50:1 53:19

**cell** 22:12 28:23

**cetera** 15:23 48:4 52:12

**chain** 36:19

**chambers** 20:21

**chance** 40:7

**changed** 6:21 38:19

**changing** 17:17 34:11

**child** 10:20 52:8

**children** 14:8,9

**Choi** 8:7 9:15 10:19 16:25 18:25 20:3 21:18 22:2 23:25 24:4 25:8 26:20 27:23,25 28:21 30:2,6,12,18 31:18 32:11 33:7,17,25 34:3,8,12 35:6,9,17,23 36:2,8,17 38:5, 16 39:21 40:3 41:13,15 42:16 46:15,20,22 47:3,14,17,20 48:6,15,22 49:2,6,9,15,18 50:3 53:8,10,13,16,24 54:20, 23

**circumstances** 12:4 21:10 52:5,8

**civil** 38:4

**clarification** 37:11

**clean** 10:11

**clear** 22:20 33:10 42:2 44:21 54:2

**clerk** 8:9

**click** 24:13,17,18

**client** 6:11 10:2,22,25 13:8 16:7,17 17:4,12,15 19:25 20:24 34:4,16 36:10 40:18,19, 21,25 41:15 43:17 48:13 51:12

**client's** 16:10 20:1 34:10

**code** 8:5 51:18

**Cohen** 23:4 28:24 33:9,21 34:24 35:5 49:22 53:18 54:22

**comfort** 51:14

**comfortable** 51:16

**committed** 21:8

**communication** 37:4 38:4

**community** 12:1 15:13

**company** 35:18

**compel** 19:25

**complete** 44:9,10

**completed** 42:20

**completely** 12:6

**complied** 43:13

**compromise** 6:21,24 7:3,4, 5,6,9,19 8:6,21,22 9:14 10:3,

9,12 11:15 15:8 16:20 17:18 19:22 21:6 22:8 23:3 25:3,13, 16 30:1 31:2,4,7,14 36:9,12, 14,15,16,17 40:19 41:9 52:17

**compromised** 16:22 18:10

**compromises** 29:25

**compromising** 6:25 9:22,23

**concerned** 12:5

**concerns** 10:19

**conduct** 35:6 36:3 38:18,23

**confer** 8:19 10:24 11:1 13:24 15:2 18:8,15 23:11 24:9 26:3, 24 32:1,5,19 37:19,20 39:5,12 43:21,22 44:4,9 45:22 46:1 48:5,8 51:11,17 53:16,25 54:3,10,14

**confirmed** 33:5,7,9

**conflating** 24:8

**confused** 19:17

**consistent** 20:1

**contact** 17:11 48:16,18

**contacted** 36:21

**contacting** 20:20

**contacts** 15:14

**continue** 29:11 31:10 43:22 52:16

**contours** 16:9 48:11 51:14

**conversation** 41:4 54:1

**copy** 8:10 36:6

**correct** 10:22 41:21

**cost** 38:12

**counsel** 9:15 12:25 13:2 14:19 17:10 27:21 39:22 40:4, 21 41:23 44:18 46:5 48:2

**counsels** 22:5

**couple** 23:4

**court** 8:11 11:17 17:11,12,22, 23 18:2,19,23,25 19:13,15 20:11 22:14 28:16,17,19 30:17 34:7,8,9,12 36:6,21 38:18,24 39:5 40:1,9,10,12 41:5,10,11,12,17 42:15 43:5, 10,13,18,25 44:2,14,16,17,19,



Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 63 of 69   Page ID #:1219

MEET AND CONFER,  on 03/11/2022
IAN LENAHAN vs TARGET CORPORATION, et al.                                    Index: Court's–fact

23,25 45:7,10,11,13,24 46:20
47:3,9 48:14,19 49:13 51:13,
18 52:19,21 53:2,15 54:7,9,
15,25

**Court's** 6:18 7:2,6 25:13
37:20 43:25 53:7 54:16

**courtesy** 8:10 23:17

**courtroom** 8:9

**Courts** 11:7 52:3

**COVID** 9:16,20 11:4 12:6
28:5,10 51:23

**crying** 10:14

**current** 7:22

**customers** 17:9

**cut** 10:12 13:14

**cutting** 24:5

---

**D**

**date** 6:6,21,24,25 7:20 8:13,
25 9:6 10:5,7 25:14 31:20
32:1

**dates** 6:22 9:9 10:1,3,4,8
32:5,20,24

**daughter** 9:19

**day** 6:9 7:24 8:1,18 16:12
23:1 25:11 27:11,12 44:7

**day-to-day** 12:3,23 15:20
16:18

**days** 11:3 23:1 24:8 44:5

**deal** 14:4,5 44:1 52:17

**death** 9:18

**decide** 49:16

**defend** 41:13

**defending** 34:15 35:3 41:1

**Defense** 40:21

**demonstrably** 39:3

**demonstrate** 16:8

**deny** 35:11

**denying** 6:19

**depo** 7:14,15 9:25 10:13
13:13,17,19 14:21 17:14,19,

25 18:4,17 40:22 41:1 42:13

**deponent** 26:1 40:12 41:10,
11

**depos** 49:19

**depose** 14:20

**deposition** 6:2,3,11,14,16,21
7:1,9 8:13,15,17 11:2 12:2,9,
22 14:3,16 15:15 16:4,16
18:12 19:1,5,6,7,11,16 20:1,2
25:3,6,23 26:8 27:2 28:7,9,13,
14,16,18,20 31:19,21,22 32:6,
10,15,21 33:18 34:1,15,19,21,
22 35:2,4,5 37:21 38:13
40:10,18 41:8,13 43:14,18
44:14,15,17,18 48:12 50:11
51:3,7,12

**depositions** 31:25 32:4,11,
14,18,19 48:3 51:4,19,22 52:2

**deputy** 8:9

**desk** 18:2

**despicable** 38:17,18,23 40:1

**difficult** 38:3

**directed** 51:8

**direction** 54:8,16

**disagree** 23:14 41:4

**discovery** 20:14

**discuss** 19:23 43:24 46:25
47:2,3

**discussed** 6:14 19:16 45:17
46:11 47:1

**discussing** 50:24

**discussion** 13:14 14:2 15:2
24:15 37:19 42:24 45:25 46:9
51:1

**discussions** 8:19

**distanced** 52:14

**docket** 8:9 43:25 45:18 53:7

---

**E**

**e-mail** 9:2 11:3 15:11 19:19,
21 20:20 21:5,20,24,25 22:1,
2,7,10,22,23 23:5 24:24 25:2
26:14,15,18,19,22,25 27:2,15
29:8,24 30:1 31:3,16 36:19,21

37:4,14 38:21 41:22 53:2

**e-mailed** 7:8 8:10 20:7,8
21:22,23 25:12,17,20,22
29:23 50:4

**e-mailing** 21:4,16,21 31:2
37:15 46:17

**e-mails** 22:9 29:18 33:4 50:6

**earlier** 6:5 21:12 23:2 24:9
25:7,14 39:21 50:11,16

**early** 42:14 44:15

**easy** 39:13

**ECF** 46:16

**effort** 28:2

**efforts** 44:4

**email** 26:25

**emergency** 11:8

**encounter** 15:17 17:5,6,8

**encountering** 12:12,18,20
15:19,23 16:13

**end** 27:19 45:9,22

**engage** 54:14

**entire** 53:20

**estimation** 27:22

**event** 51:10

**exchanged** 46:9

**excuses** 44:8

**exhausted** 22:24

**expect** 8:16 29:7

**expend** 28:2

**explain** 16:8

**explained** 14:14

**explaining** 14:6

**explanation** 51:20

**exposed** 16:17,18

**extend** 23:16

**extreme** 16:7

---

**F**

**fact** 14:4 38:16 51:6



Case 2:21-cv-02710-FLA-RAO    Document 42    Filed 03/14/22    Page 64 of 69    Page ID #:1220

MEET AND CONFER,  on 03/11/2022                                        Index: facts–interrupting
IAN LENAHAN vs TARGET CORPORATION, et al.

**facts** 49:21 50:2

**failed** 42:11

**fall-apart** 13:21

**false** 38:15 39:3

**falsely** 39:2,9

**family** 14:10

**favor** 14:18

**February** 53:22

**feel** 15:12

**figure** 15:7 16:15,20

**file** 21:7 27:7,18 28:3 46:22

**filed** 15:10 18:21 19:25 27:11 28:4 51:23

**filing** 20:6,13,16,25 27:20 30:25

**filter** 52:14

**filters** 11:22

**final** 43:6,8

**find** 19:8 37:20

**fine** 17:16 43:8 45:20 49:8,10 53:24

**finish** 14:25 23:15,19,23

**finished** 13:5,16 46:14 53:9

**flight** 38:19

**focusing** 48:8

**follow** 9:25 32:25

**follow-up** 24:24

**footnote** 7:7

**forgot** 9:24

**form** 6:13

**format** 8:15

**forward** 19:20 50:20

**foundation** 38:20,25

**Francis** 31:22

**frankly** 20:13 51:2

**Freudian** 9:7 39:25

**front** 44:5

**fully** 19:13

### G

**gave** 10:15 11:21 20:5 32:24

**give** 10:4,16 27:6 30:21 37:24 40:7 47:10

**giving** 20:3 30:23

**good** 13:7

**Grant** 6:5,15 7:17 8:20,23 9:21 10:21,25 13:1,2,4,15,23 14:1,23 17:3 18:13,18 19:3,4, 9,21 20:5 21:22 22:4,15,25 23:7,12,19,23 24:1,3,7,16 27:24 28:1 29:3 30:9,16,20,23 31:24 32:3,8,13 33:1,4,23 34:6,9,18 35:8,9,16,21,24 36:5,12,16,20,23 37:2,8,10, 15,24 38:2,5,7 39:2,24 40:8 41:7,17,21,24 42:6 43:2,9 45:3,9 46:7,14,16,24 47:12, 18,23 48:10,21,25 49:4,8,10, 17,23 50:3,8 53:9,14,21 54:13,24

**ground** 45:15

**guarantee** 6:8

**guess** 13:10 47:5

**guy** 14:20

**guys** 21:15,24 31:2 39:8

### H

**hang** 22:18 24:21 29:5

**happen** 6:3

**happened** 32:2,7 33:15 36:3 49:25 51:1 53:21 54:12

**happening** 21:16

**happy** 7:11 42:1,2 44:3 52:16,17

**hard** 16:20 30:1 44:25

**health** 10:20

**hear** 24:19

**height** 51:23

**held** 36:13

**Henna** 54:18

**HEPA** 11:22

**higher** 27:8

**history** 53:19,20

**hold** 31:11,25

**holding** 31:9,12 35:13

**holds** 54:3

**home** 13:22 28:25 34:14,17 40:24 41:14

**honestly** 31:18 35:6

**hope** 27:14

**hoping** 27:13

**hostage** 35:13

**hour** 45:14,16 54:5,13

**hours** 20:9 21:23

**hung** 24:13,17 29:4

### I

**i.e.** 6:22

**Ian** 6:3 14:17 17:25

**idea** 7:13 18:9

**imagine** 38:23

**implore** 53:4

**important** 54:14

**in-person** 11:1 13:13,17,19 14:3 16:21 17:19 18:11 19:7 20:1 28:6,15,17 41:7 51:19,22

**inconsistent** 16:5

**indoors** 16:2

**indulging** 47:7

**information** 15:13 16:23

**initiated** 29:8

**insensitive** 11:4

**insist** 13:17

**intend** 25:25

**interjecting** 35:1

**interrogate** 10:24

**interrupted** 14:24 24:1

**interrupting** 23:8,9,13,21



Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 65 of 69   Page ID #:1221

MEET AND CONFER, on 03/11/2022                                    Index: involved–night
IAN LENAHAN vs TARGET CORPORATION, et al.

37:9,12 38:6 40:5 43:4

**involved** 33:8 49:25

**involves** 12:18 50:25 51:2,3

**issue** 8:15 11:4 25:8 34:10
44:13

**issues** 14:7 53:6

———————————

**J**

**January** 33:5

**job** 12:17 17:7,8,9

**joint** 42:17,19

**judge** 7:7 46:3

**judicial** 11:10

———————————

**K**

**Karen** 42:9,22

**kids** 16:13 20:17

**kind** 10:17 17:12

**knew** 31:12,13,14 39:8

———————————

**L**

**landline** 28:25

**laptop** 17:13

**lasted** 24:10

**late** 21:10 25:9 27:11,12

**law** 20:14 27:18 52:24

**lawyers** 20:12 22:6 34:20,21

**leave** 29:18 38:22 40:2 41:5
42:10 44:22,24 54:19

**leaving** 54:17

**lecturing** 54:5

**left** 40:15 52:20

**Lenahan** 6:2,4 14:17 17:25

**Lenahan's** 15:13

**let alone** 27:7

**letting** 35:10

**level** 51:14

**lied** 38:21

**life** 12:23

**lifted** 11:6,7,9,10 28:6,12

**lightly** 53:4

**limit** 11:16

**limits** 11:18

**literally** 30:10 31:5

**live** 15:6

**lives** 15:20

**living-with-covid** 11:12

**location** 18:4 40:23,25

**lockdown** 12:10

**locked** 11:13 12:7

**long** 17:14 18:4

**longer** 28:12

**lot** 9:23 30:6

**lying** 38:20

———————————

**M**

**made** 44:21 54:1

**maintain** 38:3

**make** 17:18 22:14,20 36:9
37:23 43:21

**makes** 48:17

**making** 22:13 35:2 38:15

**mall** 12:13

**March** 6:2,4,8,12 7:10,14,16,
18,22 8:4,14,17,23,25 9:1,3,4,
5,12 10:6,7 13:17 25:18,21
26:6,9,10 30:22 33:18,20,24,
25 36:10 40:2,20 42:12

**matter** 20:15

**matters** 47:2

**means** 7:21

**mediation** 22:16 24:13,18,
21,22,25 25:19 29:15 31:25
32:5,12,14,15,18 33:16,21

**meet** 8:18 10:24 11:1 13:24
15:1 18:8,15 23:10 24:9 26:3,
24 32:1,5,19 37:18,20 39:5,12

43:20,22 44:4,9 45:22,25
48:4,8 51:11,17 53:25 54:3,
10,14

**meeting** 25:6 38:11

**member** 19:12

**mention** 8:7

**mentioned** 36:19 39:21
50:12

**message** 27:1

**messages** 21:24 22:1 26:25
29:9,18,24 31:16

**mind** 20:12 47:7

**minute** 10:1 40:15 41:6

**minutes** 33:14 38:1 40:6 45:5
47:8,10,11,25

**mode** 11:12 12:10

**modicum** 52:20

**Monday** 33:22 35:7 36:4
42:14,17,25 43:6,8 44:6 51:3

**money** 35:12

**month** 49:20 53:20

**months** 33:22

**morning** 42:14,18 43:8 44:6

**mortified** 20:22

**motion** 6:18 20:14 21:14
27:18 31:1 46:23 51:6

**motions** 43:16,23,24 45:17
46:10,25 51:21 52:18

**move** 47:21,24

**moved** 9:9

**multiple** 11:20

**mutually** 15:4 32:20

———————————

**N**

**national** 46:18

**nature** 11:2

**newborn** 14:9,11,12

**newborns** 14:12

**night** 21:1,20 22:3,22,24
29:1,4

Case 2:21-cv-02710-FLA-RAO    Document 42    Filed 03/14/22    Page 66 of 69    Page ID #:1222

MEET AND CONFER,  on 03/11/2022
IAN LENAHAN vs TARGET CORPORATION, et al.

Index: nonstop–professionalism

**nonstop** 38:1 40:6 54:5

**normal** 21:10

**noted** 45:21

**notes** 8:12

**notice** 19:5,6 20:2,4,5 21:10
25:6,9 27:6,12 28:4,7,15
30:21,25 31:20 32:9,21 50:11

**noticed** 6:16 31:22 32:13,14,
16

**notices** 28:5,13

**number** 8:9 11:16,18 23:4
28:22,23,24

**numbers** 11:5

---

**O**

**objected** 34:24 39:10,14,19

**objecting** 30:7

**objections** 35:2 45:22

**obligations** 44:9

**October** 50:5

**offer** 14:13

**offered** 10:1 41:3,9 42:7

**office** 12:12 17:12 19:12
26:23 30:13,14 34:13 37:16
40:24 41:10,11,12,16,18,20
43:18 48:14,19 51:13

**officer** 38:18,24 40:1

**officers** 45:10 52:19

**Oliver** 7:7

**online** 26:22

**opposed** 11:12

**opposing** 20:16

**opposition** 27:20 46:15,23

**order** 6:18,19 7:2,6 8:8,10
9:21 10:9 19:14 20:19 28:17
33:18 37:20 43:14 53:1

**ordered** 45:11 52:2 54:8

**orders** 11:8 20:21

**original** 28:7

**outage** 46:19

**outbreak** 34:13

**outdoors** 13:8

---

**P**

**p.m.** 21:21 30:21 49:9,14

**packed** 49:2

**paid** 38:12,13

**papers** 19:10

**parameters** 14:3 15:3 19:16,
24 25:21 26:4,7,10,14,17

**Pardon** 13:1

**parents** 14:11

**part** 8:21 12:24 15:1 34:14

**parte** 6:20 18:20 19:25 20:6,
11,13 21:1,14 25:9 27:5,6
30:21,24 44:1 47:16

**participating** 49:19

**parties** 8:12,16

**parties'** 42:10

**party** 16:2 20:16

**past** 18:11 21:21 45:5

**pay** 35:12,14

**pending** 43:15,23,24 44:1
45:17 46:10,25 47:15 50:24
52:18

**people** 9:17 11:13,16,19,20
12:2,12,15,18,21 15:17,19,23
16:4,13 17:5,6,7,8 48:16,18

**perfectly** 44:10

**period** 13:19 15:6

**person** 6:17 7:1 8:5,24 12:22
14:20 15:6,16 16:16 19:11
21:9 25:4 48:20,21 51:25
52:3,13

**person's** 52:4

**personal** 28:22

**phone** 22:18 24:10,13,17,21
25:12 28:23,24 29:4,6,10,19,
22 30:5,10,11,20 47:4

**pick** 10:5 49:1,4

**place** 8:17 11:9,23 17:14

18:1,5,7 32:11 40:21 41:2,19

**places** 14:8

**plaintiff** 8:14 13:18 18:6
35:14 40:20

**plaintiff's** 8:16 9:25 10:13
19:11 31:20 32:6,10 37:21

**planned** 40:2

**play** 20:17

**point** 13:21 21:7 34:25 39:8
45:23 50:10,17,19 51:5

**poorly** 20:14,17 27:21

**position** 7:22 8:24 9:1 11:14
14:22 15:8 16:10 17:17,21
36:13 42:11 45:13,19 47:1,14

**possibly** 26:7

**practice** 52:24

**precisely** 38:14

**prefer** 49:15

**preference** 13:15 19:10

**preferred** 6:22,24

**preplanned** 9:6,8 39:22

**prescheduled** 10:9

**press** 39:14 42:1

**pressing** 39:15

**pretty** 25:17,20

**previously** 25:15 41:8

**print** 33:4

**prior** 30:21 51:1 53:22

**pro** 10:17

**problem** 24:22,25 41:14
48:13

**proceed** 24:2

**process** 44:10,11 51:17 54:3

**produce** 6:11 14:17 15:5
36:10 37:21

**produced** 13:18 42:14

**productive** 40:17 46:2 54:4

**professional** 23:17

**professionalism** 52:21



Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 67 of 69   Page ID #:1223

MEET AND CONFER,  on 03/11/2022                                    Index: proof–schedule
IAN LENAHAN vs TARGET CORPORATION, et al.

**proof** 39:18

**proper** 20:3

**proposed** 25:13

**protective** 6:19

**provided** 17:13

**public** 14:8

**purposely** 15:20

**purposes** 18:15

**put** 11:23 28:12 36:25 54:2

---

**Q**

**question** 16:25 17:1,3 26:20 29:19 30:3 35:25 43:17 50:15

**questions** 26:2

**quickly** 25:18,20

**quid** 10:17

**quo** 10:17

---

**R**

**raised** 25:8 44:13

**ratchet** 27:8

**rate** 9:18

**reach** 27:16 29:9,19 31:17 42:12

**reached** 29:25 44:12

**reaching** 32:8

**read** 7:2,5 43:15

**reason** 11:23 14:15 50:14

**received** 8:8 26:19 30:20

**receiving** 27:19

**recognize** 7:4

**record** 22:15,20 23:25 30:19 33:10,12 35:10,14 36:20 37:1, 22 38:9,10 39:12,14,15 42:1,2 45:21 46:6,7 50:23 54:2

**recorded** 38:11 39:20 42:11

**recording** 38:12 39:7,15 40:14

**redeem** 52:20

**referred** 37:5

**referring** 18:24

**reflect** 23:25 30:19

**reflects** 20:14,17 27:21

**rehashing** 33:15

**rejecting** 7:13

**relate** 51:22

**released** 46:6,8

**relief** 51:18

**remaining** 8:15

**remote** 6:14 7:23 8:4,23 9:5 11:18 14:15,16 17:14,25 18:17,24 19:1,15,16 21:9 25:16,23 28:19 33:25 40:18

**remote-type** 26:8

**remotely** 9:13 18:4 28:11 36:11

**repeat** 46:21

**repeatedly** 29:23

**replowing** 45:15

**report** 17:21 42:17,19 45:24 52:22

**reported** 17:23 22:14

**reporter** 11:17 30:17 39:6 41:5 43:5,11 44:14,16,17,19, 23 45:1,7 46:20 47:9 49:13 53:15 54:25

**reporter's** 17:12 41:10,11,12, 17 43:18 48:14,19 51:13

**reporters** 18:2

**reporting** 35:18

**request** 9:16

**requested** 9:12,13

**require** 28:10

**reschedule** 33:21

**rescheduled** 33:17

**resolution** 37:21 42:12

**resolve** 50:21,25 53:6

**resolving** 50:23

**resources** 28:3

**respect** 11:9 43:10

**respond** 9:22 19:24 22:9 26:13 40:6

**responded** 22:22

**responding** 21:5

**response** 26:11,18 27:14 29:2

**rest** 45:18

**restaurants** 52:12

**restrictions** 11:6,8 28:6,10

**returned** 30:5 37:16

**review** 46:4

**risk** 14:9

**risky** 52:15

**room** 11:16,19,20 12:15 16:4 25:25 34:4 52:13

**rough** 42:23 43:6

**running** 48:3

**Ryu** 6:13 7:13 8:22 9:21 10:23 12:25 13:2,7,16,25 14:6,23 17:1,10 18:21 19:2,8,19 22:6, 11 23:6,7,10,18,21 24:1,6 25:12 26:19 29:2,3 32:2,7,24 33:2,3,20 35:4 36:15,18,25 37:4,9,12 38:3 39:1 40:4,15 41:19,23 42:4,9,21 43:3,8 45:2,25 46:12 47:4,21 48:5 49:16,21 53:8,10,17,18,24 54:3,21

**Ryu's** 28:23

---

**S**

**safe** 12:3,22

**safety** 10:20

**Samantha** 9:21 13:2 24:12, 16 30:20 37:14

**sandbox** 20:18

**Sarah** 54:18

**Saturdays** 54:11

**schedule** 9:24 10:10,11 49:2



Case 2:21-cv-02710-FLA-RAO   Document 42   Filed 03/14/22   Page 68 of 69   Page ID #:1224

MEET AND CONFER, on 03/11/2022                                          Index: scheduled–tonight
IAN LENAHAN vs TARGET CORPORATION, et al.

**scheduled** 6:23 25:16

**school** 16:11,12

**seconds** 24:10

**seeking** 16:23

**send** 29:18 42:23

**sending** 26:25 52:22

**sense** 51:14 52:10

**sensitive** 52:9

**separated** 17:15

**serve** 32:21 50:11,13,15

**served** 19:6 20:2 28:5,7,9,15
31:21 33:13

**session** 38:9

**short** 13:14

**shortly** 20:7

**show** 30:10 52:21

**showed** 34:23

**showing** 21:8

**sic** 38:22

**side** 9:22 10:15

**sides** 8:13

**sidetracked** 50:4

**simultaneously** 34:2 39:23
45:6

**situation** 45:3 51:25

**slack** 10:12

**slip** 9:7 39:25

**small** 52:8

**socially** 52:14

**solution** 15:4

**sort** 11:11

**sorts** 11:22

**space** 18:5

**speak** 23:9,14 29:22 40:4
42:6 53:11

**speaking** 13:5 14:24 23:8
30:18 34:2 35:1 39:23 42:7
45:6

**spend** 53:5

**spending** 33:13,14

**spent** 45:14

**spoke** 25:11 33:6

**spoken** 29:12

**spread** 16:14

**staff** 19:12

**stage** 44:13

**stand** 15:9 39:16

**standard** 31:8,11

**start** 38:6

**started** 39:4 49:19 53:19

**starting** 37:15

**stated** 41:8

**states** 8:11

**status** 42:17

**stop** 20:20 23:8,12 38:15 40:5
41:23,25 43:3

**stopping** 43:10

**store** 52:11

**straight** 22:15

**street** 12:8

**striking** 6:18

**stuff** 10:9 21:4 49:24 50:18

**subject** 23:11 27:1

**submit** 40:9,10 42:15,16 54:6

**substantive** 24:15 46:9

**sudden** 18:8

**sufficient** 15:12

**suggest** 26:6

**suggested** 7:3,6 10:6 18:6,
25 44:12,15

**suggestion** 19:2

**summary** 38:5

**Sunday** 49:5,6 53:14

**Sundays** 54:11

**supposed** 13:24 46:24 51:10

**system** 11:10 46:16

― T ―

**table** 32:17

**taking** 18:4

**talk** 13:11 18:7 22:16 24:12,
16,24 29:7,13,15,17 37:24
40:7 43:23 46:12 47:15 50:18
52:16

**talking** 18:20 22:17,25 24:19
25:7,10 35:9 40:6 48:10,11,19
49:24 50:2,9,19,23

**Target** 38:13

**Target's** 19:10

**teacher** 12:20

**team** 11:20

**telephone** 30:1

**telling** 10:14

**terms** 16:17 42:12

**thankfully** 11:5 36:6

**thing** 12:10

**things** 11:21,22 13:9 14:14,
18 16:14 27:8 31:13 48:11
53:7

**third-party** 34:22 40:11

**thought** 6:7,24 14:25 26:5
35:25

**thoughts** 25:23

**time** 23:22 26:15,17 28:2
30:17 33:13,15 34:25 36:14
37:23 44:19,24 45:5,7,8 46:12
49:8,12,16 53:5,15

**times** 14:7 23:4

**timings** 37:7

**today** 8:8 20:19 27:16,17
31:23 34:21 35:7 39:24 46:17
51:7 53:1

**told** 21:19 34:6,9,12 36:20
37:2 47:3

**tomorrow** 49:1,3

**tonight** 42:23



**traction**  25:5 26:5

**transcript**  35:12,15 36:7
42:13,20 46:4 54:7

**trip**  6:23 7:10 9:8 25:15 38:22

**true**  33:1,3 36:5 38:2,7

**truncate**  44:4

**truncating**  43:20

**turn**  42:4

**twisted**  22:13

**type**  15:16

---
**U**
---

**understand**  11:25 12:21,24
14:2,11 15:25 17:2 18:16
22:18 28:21 30:2 36:24

**understanding**  12:19

**unfair**  31:10

**unilaterally**  32:9,16,22

**unique**  16:16

**unlike**  37:17

**unreasonable**  9:16 18:14

**unreportable**  34:2 39:23
45:6

**unvaccinated**  9:17

**upcoming**  51:3

---
**V**
---

**vacation**  9:6,7 12:13 18:10
39:22

**vaccinated**  9:19 19:13 48:17

**vague**  51:9

**vulnerable**  14:13

---
**W**
---

**wait**  42:19 44:19,24 47:20

**waited**  21:2 27:3,4 50:12

**walked**  47:4,23

**walled**  15:21

**wanted**  7:1 9:5,6 10:3 35:25
38:9 39:7,10 44:18

**warrants**  51:20

**wasting**  35:11

**Waters**  33:14 43:3 44:6,21,24
45:4 46:6 47:6,13 48:1 53:25
54:17,21,22

**week**  9:8 23:2 24:9 25:7
29:22 30:4,8 51:2

**weekend**  7:12 15:12 16:2,24
45:18 53:11

**weeks**  33:16

**well-versed**  49:21 53:18

**wife**  12:19 16:11

**word**  22:19

**words**  24:19

**work**  6:1 7:14 15:23 17:7
34:13 37:22

**working**  10:22,25 11:24 12:1,
17,20 13:8 16:10,11 17:4 44:7
49:20

**works**  35:20

**wrap**  47:8,10

**writing**  31:5 33:6,7,9,12
38:21

**wrong**  36:22 37:2,6,7

**wrote**  40:3

---
**Y**
---

**year**  28:8,9

**yell**  24:14 42:5

**yelling**  22:17 37:25 38:8
39:17 40:7,8,13 41:23,24,25
42:3

**yesterday**  18:21 19:22 22:7
25:8,11,12 30:14 37:6 41:9,22

**you-all**  7:8,20 9:10 21:3
26:21 29:12,20 38:14 45:20

**Young**  54:2

---
**Z**
---

**Zoom**  38:10,11 39:6,12,13
42:1,8


